**IT IS ORDERED as set forth below:**



Date: October 6, 2023

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| IN RE: | |
| LORI ANN LAMBERT, | CASE NO. 22-40817-PWB |
| Debtor. | |
| | CHAPTER 13 |
| LORI ANN LAMBERT, | |
| OBJECTOR, | |
| v. | CONTESTED MATTER |
| COURTESY FINANCE, | |
| Claimant. | |

ORDER ON DEBTOR'S OBJECTION TO CLAIM OF COURTESY FINANCE

Form 1099-C is an informational return a creditor files with the Internal Revenue Service ("IRS") when a debt is cancelled or extinguished under certain circumstances recognized by the IRS. The upshot of the filing of the Form 1099-C is that the creditor may treat the debt as a loss and the debtor must report the cancelled debt as income.

The Debtor seeks disallowance of the claim filed by Courtesy Finance on the ground that it cancelled the debt and filed an informational return on Form 1099-C with the Internal Revenue Service in support of its discharge of the indebtedness. Courtesy Finance contends that the debt has not been cancelled or discharged because even if a creditor "charges off" a debt and files a Form 1099-C, the debt itself is not forgiven and remains collectable.

For the reasons stated herein, the Court disallows without prejudice the objection to Courtesy Finance's claim.

**I. Factual Background**

The Debtor filed a chapter 13 petition on July 8, 2022. In her schedules, the Debtor listed the debt owed to Courtesy Finance as an unsecured, nonpriority debt and did not identify it as contingent, unliquidated, or disputed.

Courtesy Finance filed an unsecured claim in the amount of $1,760.00 on July 29, 2022. [Claim No. 3]. The supporting documents attached to the claim show that on January 14, 2022, the Debtor entered into a contract to borrow $1,672.29 at an annual percentage rate of 39.95 per cent. The contract called for eighteen monthly payments of $125.00 beginning February 14, 2022. Although the contract

2

provides that the Debtor gave a security interest in a 2017 Hyundai vehicle and other personal property, nothing attached to the proof of claim shows that Courtesy Finance perfected its security interest, and it has not sought treatment as a secured claim.

About seven months after the case was filed, the Debtor objected to Courtesy Finance's claim. The Debtor argues that "the debt has been cancelled and a 1099-C has been issued on the debt" and that "because [Courtesy Finance's] claim has been cancelled and a 1099-C has been issued on the debt, it should be disallowed." [Doc. 19, ¶¶ 3-4].

Courtesy Finance does not dispute – or confirm – that it issued a Form 1099-C. Instead, it argues that, even if such an event occurred, it did not result in forgiveness of the debt and that its proof of claim, therefore, is valid. [Doc. 21].

The timing of the objection and the issuance of the Form 1099-C is somewhat unusual. The Debtor incurred the debt to Courtesy Finance on January 14, 2022, so the Form could not have been issued for the prepetition tax year of 2021. It follows that the earliest tax year Courtesy Finance could have issued a Form 1099-C would have been for the tax year 2022. This would have been *after* the Debtor filed bankruptcy on July 8, 2022, and *after* Courtesy Finance filed a proof of claim for the debt on July 29, 2022.[1]

---

[1] Because Courtesy Finance has not filed any evidence to contradict the Debtor's assertion that it issued a Form 1099-C, the Court will presume it did so.

3

**II.    Legal Background**

The issue in this case is whether the Debtor owes a debt to Courtesy Finance that is allowable in this case.

To make this determination, the Court must consider whether the Debtor has "liability on a claim" (the definition of "debt" in the Bankruptcy Code) to Courtesy Finance enforceable in this bankruptcy case. This requires consideration of the Bankruptcy Code's framework for allowance of claims and the nature of a "claim" – a right to payment – in general.

Next, the Court must decide whether a creditor's issuance of a Form 1099-C itself result in the cancellation or discharge of a debt.  This requires consideration of the purpose of Form 1099-C and its legal significance.

A.  <u>Allowance of Claims in Bankruptcy</u>

The Bankruptcy Code defines "debt" as "liability on a claim."  11 U.S.C. § 101(12).

The Bankruptcy Code does not define "Liability," but it is generally understood to mean, "The quality, state, or condition of being legally obligated or accountable." Black's Law Dictionary (11th ed. 2019).

The Bankruptcy Code defines "claim" to mean:

>>(A) *right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
>>(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (emphasis added).

Nonbankruptcy law typically determines whether a creditor has a "right to payment." *E.g., Midland Funding, LLC v. Johnson*, 581 U.S. 224, 228 (2017) ("State law usually determines whether a person has such a right [to payment]."); *Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 451 (2007) ("when the Bankruptcy Code uses the word 'claim'—which the Code itself defines as a 'right to payment,' 11 U.S.C. § 101(5)(A)—it is usually referring to a right to payment recognized under state law"); *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000) ("[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code."); *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

Generally, a claim filed by a creditor is allowed unless a party, including the debtor, objects. 11 U.S.C. § 502(a). A ground for denial of a claim is that it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

The Bankruptcy Code does not define "unenforceable," but it follows that whether a debt is unenforceable for purposes of the Bankruptcy Code depends on whether the creditor has a present and existing "right to payment" under nonbankruptcy law.

The Court next turns to the function of IRS Tax Form 1099-C with respect to a "discharge of indebtedness."

B.  Informational Form 1099-C

An entity that "discharges" indebtedness of $600 or more must file an informational return with the Internal Revenue Service that identifies the amount of the debt, the person whose debt was discharged, and the date the debt was discharged. 26 U.S.C. § 6050P. The entity making the reporting must furnish a copy to the person whose debt was discharged, and the written statement must be provided to her on or before January 31 of the year following the calendar year for which the return. 26 U.S.C. § 6050P(d).

The "informational return" is colloquially known as "Form 1099-C." 26 C.F.R. § 1.6050P–1(a). The requirement to file Form 1099-C is triggered when there is a "discharge of indebtedness." IRS Regulations deem a discharge of indebtedness to

6

have occurred when an "identifiable event" occurs "whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred." 26 C.F.R. § 1.6050P–1(a)-(b).

The IRS Regulations specifically identify seven categories of "identifiable events" that trigger the requirement for a creditor to file Form 1099-C. 26 C.F.R. § 1.6050P–1(b).  Those seven categories are:

> (A) A discharge of indebtedness under title 11 of the United States Code (bankruptcy);
> (B) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable in a receivership, foreclosure, or similar proceeding in a federal or State court, as described in section 368(a)(3)(A)(ii) (other than a discharge described in paragraph (b)(2)(i)(A) of this section);
> (C) A cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, subject to the limitations described in paragraph (b)(2)(ii) of this section, or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding;
> (D) A cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness;
> (E) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable pursuant to a probate or similar proceeding;
> (F) A discharge of indebtedness pursuant to an agreement between an applicable entity and a debtor to discharge indebtedness at less than full consideration; or
> (G) A discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt.

The IRS Regulations do not otherwise define the terms "discharge," "cancellation," or "extinguishment."

7

The IRS takes a no position on actual enforceability of a debt. The IRS has issued an Information Letter that states, "the Internal Revenue Service does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection. Section 1.6050P-1(a) of the IRS regulations provides that, solely for purposes of reporting cancellation of indebtedness, a discharge of indebtedness is deemed to occur when an identifiable event occurs whether or not an actual discharge of indebtedness has occurred on or before the date of the identifiable event." IRS Info- 2005-0207, 2005 WL 3561135 (Dec. 30, 2005).

What, then, does "discharge" mean? In IRS parlance it does not appear to mean "discharge" in bankruptcy context, *i.e.*, the elimination of personal liability (even though that is one of the identifiable events in 26 C.F.R. § 1.6050P–1(b)(1)(A)).

Instead, the IRS seems to limit its concern to a reporting requirement: reporting the "discharge" of indebtedness permits the creditor to report a loss and imposes an income reporting requirement on the debtor. In other words, when the creditor reports a loss, the IRS has information to determine whether the debtor properly accounted for the discharge of indebtedness. *Cavoto v. Hayes*, 634 F.3d 921, 923 (7th Cir.2011) ("[A] Form 1099–C allows the IRS to compare the amount of the discharged debt claimed by a lending institution with the amount of income reported by the person whose debt was discharged.").

The Court next turns to whether Courtesy Finance has a "right to payment" from the Debtor that is enforceable in this bankruptcy case.

### III. Conclusions of Law

It is undisputed that the Debtor borrowed money from Courtesy Finance, the Debtor filed a chapter 13 case providing for full payment to Courtesy Finance as an unsecured creditor, and Courtesy Finance filed a proof of claim for its debt. Although the Form 1099-C is not in evidence, its issuance after the filing of the bankruptcy case and the filing of the proof of claim tends to show that it filed a Form 1099-C for the Tax Year 2022 for the same debt.

As set forth in Part II, to determine whether Courtesy Finance has a "right to payment" from the Debtor in light of the issuance of a Form 1099-C for its debt, the Court must determine whether the issuance of a Form 1099-C resulted in or established the cancellation or discharge of the debt.

Courts have overwhelmingly held that the mere issuance of a Form 1099-C is an administrative or reporting requirement that does not carry the substantive legal significance of cancelling or discharging the debt. *E.g.*, *F.D.I.C. v. Cashion*, 720 F.3d 169, 179 (4th Cir. 2013) ("the filing [of] a Form 1099-C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of the debtor, nor is it required only where an actual discharge has already occurred"); *Owens v. Comm'r*, 67 Fed. Appx 253, 2003 WL 21196200, at *3 (5th Cir. 2003) (issuance and filing of Form 1099-C does not constitute actual cancellation of a loan); *Ware v. Bank of*

9

*America Corp.*, 9 F.Supp.3d 1329 (N.D. Ga. 2014); *In re Zilka*, 407 B.R. 684 (Bankr. W.D. Pa. 2009).

The creditor's filing of the Form 1099-C is a reporting requirement imposed by IRS regulations; the Form itself has no substantive effect on the existence of the underlying indebtedness and whether, in fact, it has been discharged for purposes of collection. In other words, whether a creditor has a "right to payment" from a bankruptcy debtor remains a matter of nonbankruptcy law, not a function of an administrative reporting requirement.

Many courts, including the Fourth and Fifth Circuits, have concluded that the issuance of Form 1099-C is not prima facie evidence that a debt has been cancelled or discharged. *Fed. Dep. Ins. Corp. v. Cashion*, 720 F.3d 169 (4th Cir. 2013); *Owens v. Commissioner*, 67 Fed. Appx 253, 2003 WL 21196200 (5th Cir. 2003) (per curiam) (unpublished); *Capital One, N.A. v. Massey*, 2011 WL 3299934 (S.D. Tex. 2011); *Carrington Mortg. Servs. v. Riley,* 478 B.R. 736 (Bankr. D.S.C. 2012); *In re Zilka*, 407 B.R. 684 (Bankr. W.D. Pa. 2009).[2]

As the Fourth Circuit has explained, "it is that separate circumstance [that gives rise to the filing of a Form 1099-C] and not the fact of filing a Form 1099-

---

[2]Some bankruptcy courts have held that while the filing of a Form 1099-C does not itself operate to extinguish an indebtedness, it is evidence of an intent to discharge the indebtedness, particularly where the debtor has relied on the Form 1099-C and has in turn reported the creditor's "loss" as taxable income on her own return. *In re Lukaszka*, 2017 WL 3381815 (Bankr. N.D. Iowa 2017); *In re Rodriguez*, 555 B.R. 871 (Bankr. S.D. Fla. 2016); *In re Reed*, 492 B.R. 261, 272 (Bankr. E.D. Tenn. 2013); *see In re Welsh*, 2006 WL 3859233 (Bankr. E.D. Pa. 2006); *In re Crosby*, 261 B.R. 470 (Bankr. D. Kan. 2001). The Court respectfully disagrees with this view.

10

C that acts as a bar." *Fed. Dep. Ins. Corp. v. Cashion*, 720 F.3d 169, 179 n.7 (4th Cir. 2013).   In other words, it is the underlying fact and law (*e.g.*, a bankruptcy discharge, a release, a foreclosure, an agreement, state law) that defines whether a debt is discharged and collection is barred, not the fact of the filing of a Form 1099-C.

The Court concludes that the Filing of a Form 1099-C is a reporting requirement that does not itself operate as or establish a discharge of indebtedness owed by the Debtor.

Moreover, the Debtor has not rebutted Courtesy Finance's "right to payment" as determined by nonbankruptcy law.

Georgia law[3] regarding negotiable instruments identifies circumstances whereby a debt is cancelled or discharged.  O.C.G.A. § 11-3-601(a) states:

> The obligation of a party to pay the instrument is discharged [as stated in article 3 of Title 11 of the Georgia Code] or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract.

One of the statutorily recognized methods of discharge is, subject to certain exceptions, "payment" of the obligation. O.C.G.A. § 11-3-602.

---

[3] Pursuant to the contract between the parties Georgia law applies. [Claim No. 3-1, Part 2 at 4].

11

In addition, O.C.G.A. § 11-3-604(a) recognizes that a person entitled to enforce an instrument may "discharge" the obligation of a party to pay the instrument by

(1) An intentional voluntary act such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge; or

(2) Agreeing not to sue or otherwise renouncing rights against the party by a signed writing.

The Court cannot conclude that the Form 1099-C issued by Courtesy Finance discharged its debt or is evidence under Georgia law of a discharge of the Debtor's indebtedness to it because the Form 1099-C is not evidence of (1) "an act or agreement" between the parties that would discharge the debtor's obligation to pay (O.C.G.A. § 11-3-601(a)); (2) payment of the obligation (O.C.G.A. § 11-3-602); or (3) an "intentional voluntary act such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge" (O.C.G.A. § 11-3-604(a)).

As a result, the Debtor has not established that Courtesy Finance's debt has been cancelled and that its claim should be disallowed.

Courtesy Finance has not explained why it issued a Form 1099-C. If it did so because of the filing of this bankruptcy case, it did so erroneously. The

12

IRS Regulations permit issuance of a Form 1099-C based on a discharge of the debt in a bankruptcy case. *See* 26 C.F.R. § 1.6050P–1(b). No bankruptcy discharge has occurred. Moreover, the Debtor's confirmed chapter 13 plan will pay Courtesy Finance's claim in full.

Courtesy Finance apparently seeks to claim a bad debt deduction for tax purposes, while still expecting payment of its claim in this case. The problem is that the Form 1099-C creates a tax issue for the Debtor because the IRS may expect the Debtor to report discharge of indebtedness income on the tax return, which could result in the IRS asserting claims for interest and penalties if the Debtor properly does not do so because the debt (1) is being paid and (2) has not been discharged.[4]

A bankruptcy court is a court of equity. A demonstrable degree of inequity exists when a creditor can obtain payment of its debt in full (albeit without interest and over a longer period than contractually provided and always with the risk that a debtor will not complete a plan) yet claim a loss for its own tax purposes that creates income tax complications for the debtor.

Given the unique circumstances of the case, the Court conditions its denial of the Debtor's objection to Courtesy Finance's claim on the condition that Courtesy Finance amend or rescind its Form 1099-C so that the Debtor does not

---

[4] The Court notes that a debtor does not have discharge of indebtedness income if it occurs when the debtor is insolvent or if the discharge occurs in a bankruptcy case. 26 U.S.C. § 108(a)(1)(A), (B).

13

have to deal with a report of discharge or cancellation of debt on her income tax returns. *See In re Zilka*, 407 B.R. 684, 691 (Bankr. W.D. Pa. 2009) ("the court will . . . as an exercise of its discretion, direct that [the creditor] forthwith file with the I.R.S. and issue to the Debtor four corrected Forms 1099-C that pertain to each of its four respective claims that are to be allowed herein. By virtue of [the creditor's] issuance of corrected Forms 1099-C, the Debtor will have the requisite documentation that he needs to obtain the income tax relief" otherwise caused by the report of taxable income to the Debtor.).

In summary, the Court concludes that (1) the filing of a Form 1099-C does not operate to or establish a discharge a debt; and (2) equity requires, under the circumstances of this case, that Courtesy Finance amend or rescind its Form 1099-C so that the Debtor does not incur a taxable event. Based on the foregoing, it is

ORDERED that the Debtor's objection to the claim of Courtesy Finance is denied without prejudice. It is

FURTHER ORDERED that Courtesy Finance shall file proof of its amendment of the Form 1099-C regarding this debt within 60 days of the entry date of this Order. It is

FURTHER ORDERED that, if Courtesy Finance does not timely file proof of its amendment of the Form 1099-C, the Debtor may seek an order disallowing its claim.

**This Order has not been prepared for publication and is not intended for publication.**

## END OF ORDER

**Distribution List**

Michael D. Hurtt
Hurtt & Johnson, LLC
P O Box 1304
Dalton, GA 30722-1304

Lori Ann Lambert
385 Langston Dr NE
Calhoun, GA 30701-8909

Brandon D. Wagner
Lueder Larkin & Hunter, LLC
Suite 390
5900 Windward Parkway
Alpharetta, GA 30005